UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x
                                    :
UNITED STATES OF AMERICA,           :
                                    :         **MEMORANDUM**
                                    :         **AND ORDER**
        -against-                   :
                                    :         10-CR-809(S-4)(KAM)
CHRISTOPHER BARRET,                 :
RYAN ANDERSON,                      :
LEON SCARLETT, and                  :
OMAR MITCHELL,                      :
                                    :
            *Defendants*.           :
                                    :
------------------------------------x

**MATSUMOTO, United States District Judge:**

      The government moves to introduce evidence that indicates that in December 2010 and January 2011, the two months after the end date of the conspiracy charged in the Fourth Superseding Indictment (the "Superseding Indictment"), Mitchell was involved in marijuana-trafficking activity with co-conspirator Clifton Williams, Mr. Barret's alleged marijuana supplier during the charged conspiracy. (*See* Gov't Mem. dated 1/18/2012.) The disputed evidence consists, in part, of text messages that were found on a cellular telephone recovered from Mr. Williams' residence, and phone records that indicate that the messages were sent from the phone recovered from Mr. Mitchell's person during his arrest. (*Id.* at 1.) As indicated in the government's motion, a phone analysis report of Mr. Williams' phone that contains the text messages themselves has

1

already been admitted into evidence, without objection, as Government Exhibit 497.  Mr. Mitchell objects to admission of the evidence, as summarized *infra*.  The court sets forth herein its bases for admitting the text messages and related evidence.

**BACKGROUND**

A. **The Text Messages**

In sum and substance, the text messages show that, after the arrest of Mr. Mitchell's co-defendants on trial and others on October 7, 2010, he called Mr. Williams to request that a package of marijuana be sent to Mr. Mitchell.  (*Id*. at 2.)  Mr. Mitchell informed Mr. Williams that he intended to sell the marijuana to customers in New York, in part, to assist his brother, co-defendant Mr. Barret.  (*Id*.)  Thereafter, on January 21, 2011, Mr. Mitchell sent a text message to Mr. Williams, listing his home address as a delivery address.  (*Id*.)  Upon receiving ten pounds of marijuana from Mr. Williams at that address on January 28, 2011, Mr. Mitchell texted Mr. Williams again, requesting that a second marijuana package be sent to a different address.  (*Id*.)  Before he could make that second delivery, however, Mr. Williams was arrested.  (*Id*. at 2.)

Nevertheless, Mr. Mitchell continued to send text messages to Mr. Williams, who received the messages through his girlfriend.  (*Id*. at 2.)  In particular, Mr. Mitchell asked how he should pay the $8,000 he owed for the ten-pound shipment of

marijuana, which Mr. Mitchell had successfully received and sold. (*Id.*)  Mr. Williams instructed Mr. Mitchell to give $2,000 to Mr. Barret's cousin "Georgia" to help pay for Mr. Barret's legal bills, and to deposit the remaining $6,000 into a bank account that Mr. Williams' girlfriend would set up for that purpose. (*Id.*)

**B. The Government's Motion**

The government asserts that the admitted text messages are direct evidence of the charged conspiracy because they are "inextricably intertwined with the charged offenses" and because "evidence that Mr. Mitchell continued to engage in drug deals for the organization (or more specifically, on behalf of the organization's leader Mr. Barret) after the arrests of Mr. Barret and most of his crew is necessary to 'complete the story of the crime on trial.'" (*Id.* at 4-5.)  The government also argues that the marijuana transactions between Mr. Mitchell and Mr. Williams arose out of the same "series" of transactions as the charged narcotics conspiracy because they involved the same source of supply (Mr. Williams); used the same method of procurement (priority express mail from Arizona through the U.S. Postal Service); and used the exact same method of payment for the marijuana (depositing money into a bank account designated by Mr. Williams). (*Id.* at 5.)

3

The government contends that the fact that Mr. Mitchell possessed contact information and was able to directly communicate with Mr. Williams is "itself powerful evidence that Mr. Mitchell's role in the organization was far more than that of a simple 'hanger-on,'" and that it "directly contradicts Mr. Mitchell's defense. . . that Mr. Mitchell was not 'actually a member of some enterprise whose object was to distribute over 1,000 kilograms of marijuana.'" (*Id*. at 2) (quoting Trial Transcript Jan. 9, 2010 at 62).

In the alternative, the government asserts that this evidence is properly admitted as "other act" evidence pursuant to Federal Rule of Evidence 404(b) ("Rule 404(b)") because it directly corroborates a significant matter in the case – testimony from cooperating witnesses that Mr. Mitchell was a member of the narcotics conspiracy and distributed marijuana on behalf of the organization. (*Id*. at 5.)

**C. Mitchell's Objections**

Mr. Mitchell objects to admission of the text messages on grounds that the disclosure has been untimely and that he would be unfairly prejudiced by its introduction because he has not had a fair opportunity to discover this link between himself and Mr. Williams until today. (Mitchell Mem. at 1.) Mr. Mitchell also argues that the text messages should be precluded as direct evidence because they relate to an offense that is

4

independent of the charged conspiracy.  (*Id*. at 2.)  Moreover, Mr. Mitchell contends that the evidence should be precluded under Rule 404(b) because "the relevance here is highly speculative and dangerous because the jury may misinterpret the later offense as evidence of participation and membership in the charged conspiracy when there may be an equally or more plausible, and more benign explanation."  (*Id*.)

## DISCUSSION

### A. No Unfair Prejudice Against Mitchell

Although Mr. Mitchell contends that the government has unfairly surprised him with the text messages in the middle of trial, the court finds that this argument lacks any merit.  The phone analysis report that contained the text messages was (1) provided to all defendants in discovery; (2) referenced in Item 28 ("Telephone Records") of the government's Exhibit List, which the government filed on ECF on December 13, 2011, nearly one month before the commencement of this trial; (3) marked and produced as an exhibit before trial; and (4) admitted into evidence without objection as Exhibit 497 at trial.  (*See* ECF No. 337 at 3; Gov't Mem. at 4 n.3.)

The parties disagree as to whether the phone from which Mr. Mitchell texted Mr. Williams was the same phone recovered from Mr. Mitchell at the time of his arrest.  (*Compare* Gov't Mem. at 2 *with* Mitchell Mem. at 1.)  On reply, however,

5

the government attaches an exhibit that demonstrates that the phone number of the cellular telephone seized from Mr. Mitchell at the time of his arrest corresponds to the number that sent and received the relevant text messages to and from Mr. Williams' phone. (Gov't Reply at 1; Gov't Reply - Exhibit A.)

Even if the phone recovered from Mr. Mitchell was not the same one he used to text Mr. Williams, however, Mr. Mitchell's argument that "there would be no way for [Mitchell and his counsel] to discover that [they] should be correlating some different number for Mr. Mitchell with that of Mr. Williams" fails. Indeed, any disadvantage that Mr. Mitchell now suffers is due to Mr. Mitchell's own failure to inform his counsel regarding another phone that he used to communicate with Mr. Williams. Accordingly, the court rejects Mr. Mitchell's argument that the introduction of the text messages--which are already *in* evidence--causes "insurmountable" prejudice.

**B. Admissibility as Direct Evidence**

It is well settled in the Second Circuit that where an indictment contains a conspiracy charge, "[a]n act that is alleged to have been done in furtherance of the alleged conspiracy" is considered "part of the very act charged." *United States v. Diaz*, 176 F.3d 52, 79 (2d Cir. 1999) (internal quotation marks and alterations omitted); *see United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994) (in conspiracy cases,

"uncharged acts may be admissible as direct evidence of the conspiracy itself"). Consequently, evidence of uncharged criminal conduct is relevant and not considered "other crimes" evidence under Rule 404(b) if the uncharged conduct "arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Khan*, 591 F. Supp. 2d 202, 205 (E.D.N.Y. 2008) (quoting *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000)); *see United States v. Nektalov*, 325 F. Supp. 2d 367, 370 (S.D.N.Y. 2004) (same).

As an initial matter, the court finds that the text messages are not admissible as direct evidence of the charged conspiracy because they are not "inextricably intertwined" with evidence of the charged conspiracy. On the contrary, the text messages could be construed as evidence of a separate and factually distinct conspiracy motivated by Mr. Mitchell's desire to assist his recently incarcerated brother by selling marijuana to raise funds for legal fees or to enhance his own financial condition through marijuana trafficking. Indeed, the evidence proffered by the government will purportedly show that Mr. Mitchell specifically advised Mr. Williams that he wanted the marijuana shipments so that he could sell the drugs and use the money to "help his brother" (*i.e.*, Mr. Barret). (Gov't Mem. at

3.)  Consequently, admission of the text messages as direct evidence of the conspiracy may mislead the jury to convict Mr. Mitchell on Count Two of the Superseding Indictment on the basis of events that may not have been related to the charged conspiracy.  Accordingly, the court denies the government's motion to admit the text messages as direct evidence of the charged conspiracy.

**C. Admissibility Pursuant to Rule 404(b)**

The Supreme Court has set forth four requirements for courts to follow in exercising their discretion under Rule 404(b):  "Prior bad-acts evidence must be (1) offered for a proper purpose, (2) relevant, and (3) substantially more probative than prejudicial.  In addition, (4) at the defendant's request, the district court should give the jury an appropriate limiting instruction." *United States v. Downing*, 297 F.3d 52, 58 (2d Cir. 2002) (citing *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988)); *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002) (similar).

The Second Circuit has "adopted an inclusionary approach to evaluating Rule 404(b) evidence." *United States v. Edwards*, 342 F.3d 168, 176 (2d Cir. 2003); *see also Garcia*, 291 F.3d at 136 (same).  Under this inclusionary approach, "uncharged bad acts may be admitted into evidence for any relevant purpose other than propensity, provided that the

probative value of the evidence outweighs the danger of unfair prejudice." *United States v. Graziano*, 391 F. App'x 965, 966 (2d Cir. 2010); *see also Edwards*, 342 F.3d at 176 (quoting *Garcia*, 291 F.3d at 136) (stating that the inclusionary approach "allows evidence to be received at trial for any purpose other than to attempt to demonstrate the defendant's 'criminal propensity'"). One purpose for which similar acts may be introduced pursuant to Rule 404(b) is to prove knowledge, intent, identity, and plan or design. Fed. R. Evid. 404(b). Notably, "[t]he proof is admissible even if the acts occurred after the crime charged in the indictment." *United States v. Arroyo-Angulo*, 580 F.3d 1137, 1149 (2d Cir. 1978); *United States v. Curley*, 639 F.3d 50 (2d Cir. 2011) (noting that "[s]ubsequent acts are admissible under Rule 404(b)"). The court has broad discretion to admit evidence pursuant to Rule 404(b), and its ruling will not be overturned on appeal absent abuse of discretion. *See Carboni*, 204 F.3d at 44.

The court finds that the text messages are admissible pursuant to Rule 404(b) because they are (1) offered for a proper purpose, (2) relevant, and (3) substantially more probative than prejudicial, and (4) the court will provide an appropriate instruction to the jury. The court finds *Arroyo-Angulo*, 580 F.2d 1137 (2d Cir. 1978), instructive. There, appellants were charged with conspiracy to violate the narcotics

laws between December 1975 and February 1976.  580 F.2d at 1139.
The government's direct evidence included evidence that Arroyo
and Rayo were "swimmers" and co-conspirators who donned wetsuits
and swam to ships moored in the San Francisco harbor to obtain
bundles of cocaine that had been lowered into the water by
members of the vessels' crews.  *Id*. at 1140.  At trial, the
government introduced evidence that nine months after the
offenses charged in the Superseding Indictment, Arroyo and Rayo
engaged in similar acts in October 1976, when they swam to
retrieve cocaine from a moored vessel in a Portland, Oregon
harbor.  *Id*. at 1140-1141.

On appeal, the Second Circuit found "meritless"
appellants' contentions that the trial court erred in admitting
evidence of their participation in the Portland smuggling
incident pursuant to Rule 404(b).  *Id*. at 1149.  Even though the
Portland incident occurred nine months after the crimes charged
in the indictment, the Second Circuit found that the incident
was "certainly . . . not remote in time from the crimes charged
here" and that "[t]he evidence was . . . clearly relevant to
establish both intent and a common scheme or design and its
admission below was properly within the discretion of the trial
judge," particularly because "the similarities between the
crimes charged is striking."  *Id*.

Here, as in *Arroyo-Argulo*, the text messages are offered for a proper purpose and relevant to show Mr. Mitchell's intent and knowledge regarding the charged marijuana conspiracy. They also show a common scheme, particularly because, as the government points out, the incidents involved the same source of supply; used the same method of procurement; and used the same method of payment for the marijuana. (Gov't Mem. at 5.) Moreover, the evidence is not too remote in time because it arose from events that occurred in December 2010 and January 2011, the two months after the period charged in Count Two. In addition, the relevance of the text messages is not substantially outweighed by the danger of unfair prejudice to the defendants because they do not involve conduct that is any more sensational or disturbing than the crimes charged. *See United States v. Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992) (finding no unfair prejudice where "evidence of prior narcotics transactions 'did not involve conduct any more sensational or disturbing than the crimes with which [the appellants were] charged.'") (quoting *United States v. Roldan–Zapata*, 916 F.2d 795, 804 (2d Cir. 1990)).

Accordingly, the court grants the government's motion to admit the text messages pursuant to Rule 404(b). The court will also issue a limiting instruction that the evidence is admissible only against Mr. Barret and Mr. Mitchell to show

their knowledge and intent regarding the charged marijuana conspiracy and to show a common scheme.

## CONCLUSION

For the reasons set forth above, the court (1) denies the government's motion to admit the text messages as direct evidence of the charged conspiracy and (2) grants the government's motion to admit the text messages pursuant to Rule 404(b).

SO ORDERED.

Dated: January 20, 2012
Brooklyn, New York

```
            /s/
```
**KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York